751 So.2d 290 (1999)
STATE of Louisiana
v.
Tony A. WATERS.
No. 99KA0407.
Court of Appeal of Louisiana, First Circuit.
November 5, 1999.
Rehearing Denied December 30, 1999.
*291 Walter P. Reed, District Attorney, Covington, by: Dorothy A. Pendergast, Assistant District Attorney, Metairie, Counsel for Appellee, State of Louisiana.
William M. Magee, Covington, Counsel for Defendant/Appellant, Tony A. Waters.
Before: GONZALES, FITZSIMMONS and WEIMER, JJ.
GONZALES, J.
Defendant, Tony A. Waters, was charged by bill of information with possession with intent to distribute marijuana, a violation of La. R.S. 40:966(A)(1). Defendant filed a motion to suppress evidence, which was denied by the trial court following a hearing. Defendant withdrew his initial plea of not guilty and entered a plea of guilty, reserving his right to appeal the denial of the motion to suppress. See State v. Crosby, 338 So.2d 584 (La.1976). The trial court sentenced defendant to imprisonment at hard labor for a term of thirteen years, with credit for time served. On appeal, defendant urges in a single assignment of error that the trial court erred by denying the motion to suppress.
Three witnesses testified at the suppression hearing. Corporals Richard Magee and Jeff Edwards of the St. Tammany Parish Sheriff's Office testified for the State, and the defendant testified on his own behalf.
At approximately 3:10 a.m. on May 10, 1996, Corporals Magee and Edwards were seated in Corporal Magee's police unit on the shoulder of Interstate Highway 12 (I-2) in St. Tammany Parish. As they were about to pull out onto the roadway, defendant drove by in a hatchback Toyota car traveling eastbound on I-12. Riding with defendant were his fiancée (sometimes referred to herein as "the passenger"), and his seventeen month old daughter. Corporal Magee pulled out and proceeded behind *292 defendant's vehicle. As the officers were approaching defendant's vehicle from its rear, they observed the vehicle drift or veer to the right and make contact with the fog line to the right of the vehicle. Corporal Magee activated the emergency lights on the police unit and stopped defendant's car. According to Corporal Magee, he often comes into contact with fatigued drivers more at that time of night than at other hours of the day. Corporal Magee testified he was concerned the driver was either too fatigued to operate the vehicle safely or was intoxicated.
When Corporal Magee made the traffic stop, Corporal Edwards remained inside the unit. Corporal Magee exited the unit, approached the driver's side window of the Toyota, and asked defendant for his driver's license, which defendant gave to him. Corporal Magee had defendant exit the car and meet him at its rear. Corporal Magee explained to defendant the reasons for the stop. Defendant was extremely nervous, more so than persons are on an average traffic stop. He was breathing rapidly, failed to make eye contact with Corporal Magee, shuffled his feet, and would not stand still. Defendant did not appear to be intoxicated but did say he was somewhat tired. Defendant told Corporal Magee he had been in Texas for five days and had also been in New Mexico.
Corporal Magee went to the passenger side window of the Toyota and spoke to the passenger through the partially opened window. At Corporal Magee's request, she gave him the registration papers for the car. While they were talking, she told Corporal Magee they had been to Texas for five days but nowhere else. She too was outwardly nervous, not making eye contact with Corporal Magee, and giving him short responses to questions he posed to her.
Corporal Magee asked defendant if he had ever been arrested. Defendant replied in the affirmative, indicating he had once been arrested several years before for a minor incident. Corporal Magee advised defendant he would issue defendant a warning citation for improper lane usage, and proceeded back to his unit to fill out the citation.
While preparing the citation, Corporal Magee requested a computer check of defendant's name. The computer check revealed defendant had been arrested on charges of manslaughter and possession with intent to distribute narcotics.[1]
Corporal Magee exited his unit with the completed warning citation and explained it to defendant. He informed defendant that he was free to go but asked defendant if defendant would mind if he asked him a couple of questions. Defendant answered in the negative, and Corporal Magee asked defendant if he had any stolen property, money, weapons, or narcotics in the car. Concerning whether or not there was a weapon in the car, defendant either stated he did not think so or he did not answer the question.
Corporal Magee then posed the same question about a weapon to the passenger who replied there was a weapon under the driver's seat. Corporal Magee asked her to exit the car for him to retrieve the weapon for the safety of all those at the scene. He looked beneath the driver's seat but found no weapon. The passenger stated the weapon was under the passenger's seat. Corporal Magee looked there but again found no weapon. Finally, the passenger told him she believed it was in her purse behind the passenger's seat. Corporal Magee located the purse and found a gun inside it. At that point, Corporal Magee detected an overpowering odor of raw marijuana inside the car, an odor he recognized based on his training, education, and experience.
Corporal Magee went over to the police unit and asked Corporal Edwards to come to the Toyota. When Corporal Edwards *293 did so, he detected what he described as an overwhelming smell of marijuana in the car. The testimony of both officers was that defendant gave oral consent to search the car. Defendant testified that he did not know whether or not he gave consent to a search. Corporal Magee searched the car and found a green canvas duffel bag filled with approximately twenty-one bundles of suspected marijuana. Defendant was then advised of his constitutional rights and placed under arrest.
After discovery and seizure of the duffel bag and its contents, defendant's car was towed to the police maintenance facility where a thorough search of the car resulted in the seizure of four more bundles of suspected marijuana found in another bag inside the car and a plastic cup containing suspected loose marijuana found between the seats of the car. Corporal Edwards testified the total weight of the suspected marijuana was approximately sixty pounds.
Defendant contends there was no reasonable suspicion to justify stopping his vehicle in the absence of evidence that he committed the traffic offense of improper lane usage. He essentially maintains there was no violation of La. R.S. 32:79,[2] dealing with improper lane usage, because his vehicle did not cross the fog line and, thus, never left his lane of travel. He further contends any consent to search given after the stop was invalid, because the consent was coerced through threats made by the police to arrest his fiancée and place his child in State custody. Thus, he concludes the trial court erred by denying the motion to suppress the seized physical evidence.
The Fourth Amendment to the United States Constitution and Article I, Section 5, of the Louisiana Constitution protect people against unreasonable searches and seizures. However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by La. C.Cr.P. art. 215.1, as well as both federal and state jurisprudence. Terry v. Ohio, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); State v. Bracken, 506 So.2d 807, 811 (La.App. 1 Cir.), writ denied, 511 So.2d 1152 (La.1987). Reasonable suspicion for an investigatory detention is something less than probable cause and must be determined under the facts of each case by whether or not the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. State v. Pautard, 485 So.2d 909, 911 (La.1986). The right to make an investigatory stop and question the particular individual detained must be based upon reasonable suspicion to believe that he has been, is, or is about to be engaged in criminal conduct, including the violation of a traffic regulation. State v. Payne, 489 So.2d 1289, 1291 (La.App. 1 Cir.), writ denied, 493 So.2d 1217 (La. 1986). See also Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). The totality of the circumstances must be considered in determining whether or not reasonable cause exists. In order to assess the reasonableness of an officer's conduct, it is necessary to balance the need to search or to seize against the harm of invasion. State v. Scott, 561 So.2d 170, 173 (La.App. 1 Cir.), writ denied, 566 So.2d 394 (La.1990).
Our review of jurisprudence involving traffic stops based on reasonable suspicion of a traffic violation discloses that, most commonly, stops have been found valid when based on reasonable suspicion *294 that the individual stopped has clearly violated a traffic regulation. See, e.g., State v. Inzina, 31,439 (La.App. 2 Cir. 12/9/98), 728 So.2d 458, 466 (Trooper saw defendant's vehicle drift to the right and cross the fog line, nearly striking a storm drain, and then the defendant jerked his car back into the lane.); State v. Jackson, 629 So.2d 1374, 1380 (La.App. 2 Cir.1993), writ denied, 94-0201 (La.5/6/94), 637 So.2d 1046 (Within approximately ¾th mile, trooper saw defendant's vehicle swerve over the dividing line between the two northbound lanes at least three different times.); State v. Shoemaker, 569 So.2d 169, 172 (La.App. 1 Cir.1990), writ denied, 572 So.2d 73 (La.1991) (During an estimated one-half mile distance, the defendant's vehicle drifted across the center line, straddled the center line for as much as 1/10th of a mile, then drifted back into the right lane and continued to drift all the way onto the right road shoulder and proceeded for an approximate 1/10th mile distance before again drifting to the left, across the center line, and then back again onto the right road shoulder.); State v. Williams, 560 So.2d 899, 901 (La.App. 1 Cir.), writ denied, 565 So.2d 948 (La.1990) (Defendant's vehicle crossed the double yellow center line and forced trooper off the road, onto the shoulder.); State v. Murley, 514 So.2d 1189, 1191 (La.App. 1 Cir.1987), writ denied, 520 So.2d 424 (La.1988) (Officer clocked the defendant exceeding the speed limit and changing lanes without signaling.); State v. Elias, 509 So.2d 86, 88 (La.App. 1 Cir.), writ denied, 512 So.2d 464 (La.1987) (Trooper stopped defendant's vehicle after seeing it weave by crossing the lane dividing line on his left on one occasion and the solid line on his right on two occasions.) The circumstances in these cases sharply contrast with those in the instant case.
In the instant case, a clear violation of a traffic violation did not occur because the defendant's vehicle never left its lane of travel. Further, the contact with the fog line did not continue for a long distance, nor did it repeatedly occur, nor was it coupled with other action which constituted a traffic violation. Thus, the officers had no reasonable suspicion to believe the defendant had committed a traffic violation, or that he was about to commit a traffic violation. In the absence of any testimony by either officer that defendant's vehicle ever left the confines of his vehicle's lane of travel, or that his contact with the fog line was coupled with other suspicious action, it was unreasonable for Corporal Magee to initiate an investigatory stop based solely on the officers' observations of defendant's vehicle veering to the right and making a single contact with the fog line on the side of the road. Those observations fall short of the requisite reasonable suspicion to effect a valid traffic stop. Accordingly, the trial court should have granted defendant's motion to suppress. See and compare State v. Vaughn, 448 So.2d 915, 916 (La.App. 3 Cir.1984) (per curiam) in which the court found the defendant's actions crossing six inches over the center line and traveling for approximately ten feet coupled with his vehicle swaying within its own lane of travel was insufficient to constitute reasonable suspicion.[3]
Therefore, we find merit in defendant's assignment of error. Accordingly, defendant's conviction and sentence are reversed. Defendant's motion to suppress is granted. The case is remanded to the trial court to allow defendant an opportunity to withdraw his guilty plea and for further proceedings in accordance with law. Cf. State v. Bunnell, 517 So.2d 439 (La.App. 1 Cir.1987).
For the foregoing reasons, the defendant's conviction and sentence are REVERSED, the motion to suppress is *295 GRANTED, and the case is REMANDED.
WEIMER, J., dissents with reasons.
WEIMER, Judge, dissenting.
I respectfully dissent, believing the initial stop to be reasonable.
Officer Richard Magee has ten years of experience with the St. Tammany Parish Sheriffs Office and testified he works in the "traffic division" (as opposed to the narcotics division). Officer Magee stated he saw the defendant's vehicle "drift to the right hand side [of the road] and make contact with the fog line." It was approximately 3:10 A.M.
Based on this incident, Officer Magee became concerned that the defendant was "possibly an intoxicated driver, possibly a fatigued driver." Officer Magee went on to indicate that very early in the morning he encounters people who have been on the road for quite some time, and at that time he encounters proportionally more intoxicated and fatigued drivers than at other times.
Officer Jeff Edwards, who has been with the St. Tammany Parish Sheriffs Office for approximately seven years, was riding with Officer Magee. He testified similarly to Officer Magee when he stated he saw the defendant's vehicle "hit the white fog line."
The defendant testified and denied any driving irregularities.
Following the stop, the defendant was issued a warning citation for improper lane usage. See LSA-R.S. 32:79.[1]
In this matter, a traffic officer testified that, based on his experience, he encounters fatigued and intoxicated drivers in the early morning hours more often than at other times. He observed the drift of the vehicle operated by the defendant and, based on this observation and his experience, immediately initiated a stop to determine the driver's condition. He obviously determined the drift of the vehicle was sufficient to indicate an impaired driver and immediate action was necessitated for further investigation.
For purposes of analyzing a situation and determining whether an investigatory stop is reasonable, the totality of circumstances to be considered may include the officer's objective observations; a "trained officer may draw inferences and make deductionsinferences and deductions that might well elude an untrained person." Moresi v. State, Department of Wildlife and Fisheries, 567 So.2d 1081, 1086-87 (La.1990).
In order to assess the reasonableness of an officer's conduct in making an investigatory stop, it is necessary to balance the need to search or to seize against the harm of invasion. State v. Scott, 561 So.2d 170, 173 (La.App. 1 Cir.), writ denied, 566 So.2d 394 (1990).
Fatigued or intoxicated operators of motor vehicles pose a threat to themselves and to others. When someone's driving indicates impairment, it is not unreasonable to stop them briefly to ascertain if they are fatigued or intoxicated and thus insure the safety of the driver, any passengers, and the public. See State v. McVan, 32,434 (La.App. 2 Cir. 3/11/99), 744 So.2d 641, 642, which found reasonable suspicion for an investigatory stop where a motorist was observed weaving back and forth within his lane and driving 10 miles below the speed limit. The court balanced the "right to be left alone" with "the right of law enforcement to investigate crime and also to protect and serve."
In this matter, the trial judge observed the testimony of the officers and the defendant and made a credibility determination *296 regarding the defendant's driving. Such credibility determinations are within the trial court's sound discretion and should not be disturbed on appeal absent a showing of clear abuse of discretion. State v. Fisher, 94-603, p. 6 (La.App. 3 Cir. 11/2/94), 649 So.2d 604, 607, writ denied, 94-2930 (4/7/95), 652 So.2d 1344. Additionally, in State v. Shoemaker, 569 So.2d 169, 172 (La.App. 1 Cir.1990), writ denied, 572 So.2d 73 (1991), this court noted that a trial court's determination on a motion to suppress that a trooper did not intentionally precipitate an encounter constitutes a credibility determination that should not be disturbed unless manifestly erroneous.
Given the totality of the circumstances, I do not believe the trial judge erred in determining the initial stop was valid. After the initial stop, I believe the level of the officers' suspicion gradually, but steadily heightened beyond the initial level of reasonable suspicion and ripened into probable cause to search for contraband when Officer Magee detected the strong odor of marijuana inside defendant's vehicle.
NOTES
[1] During his testimony, defendant acknowledged he had been convicted of voluntary manslaughter and a misdemeanor offense of possession of marijuana.
[2] Louisiana Revised Statute 32:79 reads in pertinent part:

Whenever any roadway has been divided into two or more clearly marked lanes for traffic, the following rules, in addition to all others consistent herewith, shall apply.
(1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.
[3] But see State v. McVan, 32,434 (La.App. 2 Cir. 3/11/99), 744 So.2d 641, writ not considered, 99-1021 (La.5/26/99), 743 So.2d 653, in which the court found reasonable suspicion based on the stopped vehicle having remained within its lane but having traveled from the fog line to the center line, back to the center of the lane, and then to the center line again.
[1] There may be a question as to whether or not defendant's actions constituted a traffic violation. Compare State v. Fisher, 94-603, p. 6 (La.App. 3 Cir. 11/2/94), 649 So.2d 604, 607, writ denied, 94-2930 (La.4/7/95), 652 So.2d 1344 with State v. Bradley, 504 So.2d 1144, 1147 (La.App. 5 Cir.1987).