780 So.2d 1053 (2001)
STATE of Louisiana
v.
Tony A. WATERS.
No. 2000-K-0356.
Supreme Court of Louisiana.
March 12, 2001.
*1054 Richard P. Ieyoub, Attorney General, Walter P. Reed, District Attorney, Dorothy A. Pendergast, Metairie, Counsel for Applicant.
Philip M. Bradley, Baton Rouge, Arthur A. Lemann, III, New Orleans, Counsel for Respondent.
PER CURIAM:
This prosecution of respondent arises out of the seizure from his car of approximately 60 pounds of marijuana following an early morning traffic stop on Interstate 12 ("I-12") as it passes through St. Tammany Parish. The state charged respondent with possession of marijuana with the intent to distribute in violation of La.R.S. 40:966(A)(1). After the trial court denied his motion to suppress the evidence, respondent entered a plea of guilty as charged, reserving his right to appeal from the court's adverse ruling on the suppression issue. See State v. Crosby, 338 So.2d 584 (La.1976). The trial court subsequently sentenced respondent to 13 years imprisonment at hard labor. On appeal, the First Circuit reversed the ruling of the trial court on the motion to suppress and vacated respondent's guilty plea and sentence. State v. Waters, 99-0407 (La.App. 1st Cir.11/5/99), 751 So.2d 290. We granted the state's application to review the correctness of that determination and now reverse.
At approximately 3:10 a.m. on May 10, 1996, Corporals Magee and Edwards were seated in Magee's police unit on the eastbound shoulder of I-12 in St. Tammany Parish. As they were about to pull out *1055 onto the roadway, respondent drove by in a hatchback Toyota car. Riding with respondent were his fiancee and his 17-month-old daughter. Corporal Magee pulled out behind respondent's vehicle. As the officers approached the Toyota from behind, they observed the vehicle drift or veer to the right and make contact with the fog line running along the shoulder.
Corporal Magee testified at the hearing on the motion to suppress that in the course of working traffic duty for approximately two years of his 10 years with the St. Tammany Parish Sheriff's Office, he had often come into contact with fatigued drivers, more so at that time of night than at other hours of the day. The officer testified that he was concerned the driver of the Toyota was either too fatigued to operate the vehicle safely or was intoxicated. Corporal Magee activated the emergency lights on the police unit and stopped respondent's car.
In rapid sequence, Corporal Magee informed respondent he would receive a warning citation for improper lane use in violation of La.R.S. 32:79; conducted a routine driver's license and vehicle registration check; elicited partially conflicting accounts from respondent and his passenger of their itinerary as he observed their unusually nervous behavior; determined through a computer check that respondent had prior arrests for possession with intent to distribute narcotics and manslaughter; filled out a citation form for improper lane use; and secured an equivocal consent to search the car from respondent, who saw "no need" to sign a waiver form. The officer also secured an admission by respondent's passenger that there was a weapon in the car. The passenger first directed Corporal Magee to the floorboard underneath the driver's seat, then to the floorboard underneath the passenger seat, and finally to her purse behind the passenger seat where the officer found the weapon. At that point, Corporal Magee detected an overpowering odor of raw marijuana inside the car, an odor he recognized immediately based on his training and experience.
Corporal Magee returned to the police unit and asked Corporal Edwards to come to the Toyota. When Corporal Edwards did so, he too detected what he described as an overwhelming smell of marijuana in the car. Provided with the opportunity by the officers, respondent conferred with his passenger and then gave consent to search the car, although he continued to refuse to sign the form. Corporal Magee searched the car and found a green canvas duffel bag filled with approximately twenty-one bundles of marijuana. The officer then placed respondent under arrest.
Following the discovery and seizure of the duffel bag and its contents, respondent's car was towed to the police maintenance facility where a thorough search of the car resulted in the seizure of four more bundles of marijuana found in another bag inside the car, and a plastic cup containing loose marijuana found between the seats of the car. Corporal Edwards testified that the marijuana weighed approximately 60 pounds.
In its written reasons for denying the motion to suppress, the trial court found that Corporal Magee's testimony "established a traffic violation" which, given the early morning hours, "indicated a quite reasonable suspicion that either the defendant was intoxicated or that he was too weary to safely operate a motor vehicle." The court further determined that the traffic stop then gave rise to probable cause to search the vehicle for contraband when Magee went into the vehicle to find the gun respondent's fiance admitted was inside the Toyota and then detected the reeking odor of marijuana.
The court of appeal reversed the trial court's judgment on grounds that "[i]n the absence of any testimony ... that defendant's vehicle ever left the confines of his vehicle's lane of travel, or that his contact with the fog line was coupled with other suspicious action, it was unreasonable for *1056 [the officers] to initiate an investigatory stop based solely on the officers' observations of defendant's vehicle veering to the right and making a single contact with the fog line on the side of the road." Waters, 99-0407 at 7, 751 So.2d at 294. In dissent, Judge Weimer agreed with the trial court that "[w]hen someone's driving indicates impairment, it is not unreasonable to stop them briefly to ascertain if they are fatigued or intoxicated and thus insure the safety of the driver, and passengers, and the public." Waters, 99-0407 at 2, 751 So.2d at 295 (Weimer, J., dissenting).
We concur with the trial court and the dissent that Corporal Magee had an objectively reasonable basis for stopping respondent's vehicle. As a general matter, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996) (citations omitted). The standard is a purely objective one that does not take into account the subjective beliefs or expectations of the detaining officer. Whren, 517 U.S. at 813, 116 S.Ct. at 1774 ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."). Although they may serve, and may often appear intended to serve, as the prelude to the investigation of much more serious offenses, even relatively minor traffic violations provide an objective basis for lawfully detaining the vehicle and its occupants. See, e.g., State v. Richards, 97-1182, p. 2 (La.App. 5th Cir.4/15/98), 713 So.2d 514, 516 (failure to come to a complete stop at a stop sign); State v. Dixon, 30,495, p. 1 (La.App.2d Cir.2/25/98), 708 So.2d 506, 507 (traveling less than a car length behind lead vehicle); State v. Duran, 96-0602, p. 1 (La.App. 5th Cir.3/25/97), 693 So.2d 2, 3 (failure to signal before changing lanes). In Louisiana, as in other jurisdictions, a car which partially leaves its lane of travel and crosses the fog line either at the center of a divided highway or on the right hand shoulder of the road therefore provides the police with probable cause to believe that a traffic violation for improper lane use has occurred. State v. Inzina, 31,439, p. 12-13 (La.App. 2nd Cir.12/9/98), 728 So.2d 458, 466 (vehicle crossed right-hand fog line and nearly struck storm drain); State v. Colarte, 96-0670, p. 4 (La.App. 1st Cir.12/20/96), 688 So.2d 587, 591 (without signaling vehicle veered from the left lane into the right lane and then crossed the fog line on the shoulder), writ denied, 97-1015 (La.10/3/97), 701 So.2d 197; see also United States v. Jones, 185 F.3d 459, 461 (5th Cir.1999) (vehicle momentarily crossed the left-hand fog lane of its lane while avoiding construction work); United States v. Smith, 80 F.3d 215, 219 (7th Cir.1996) (vehicle crossed over fog line on shoulder of the lane); United States v. Quinones-Sandoval, 943 F.2d 771, 773 (7th Cir.1991)(vehicle ran over left and right fog lines while passing); United States v. Fiala, 929 F.2d 285, 286 (7th Cir.1991)(vehicle drifted roughly one-half its width over the right-hand fog line of a divided highway); but see State v. Vaughn, 448 So.2d 915, 916 (La.App. 3d Cir.1984) (vehicle crossing six inches over center fog line for approximately 10 feet and then weaving in its own lane did not give rise to reasonable suspicion for an investigatory stop).
In the present case, Corporal Magee testified that respondent's Toyota merely touched the right-hand fog lane on the shoulder but did not cross it. Respondent urges this Court to find that this "almost violation" marks the de minimus point at which Whren's objective approach no longer provides a workable rule for determining the reasonableness of vehicular stops. However, La.R.S. 32:79(1) provides that on a divided roadway "[a] vehicle shall be driven as nearly as practicable entirely within a single lane ... (emphasis added)." Corporal Magee therefore observed a violation of the statute, albeit a minor one, when the Toyota veered in its *1057 lane for no apparent reason and made contact with the right-hand fog line.
In Whren, the Supreme Court expressly addressed concerns that its objective standard for determining the reasonableness of vehicular stops based on traffic infractions would throw open wide the door to the use of myriad traffic regulations by the police "to single out almost whomever they wish for a stop." Whren, 517 U.S. at 818, 116 S.Ct. at 1777. "[W]e know of no principle," the Court observed, "that would allow us to decide at what point a code of law becomes so expansive and so commonly violated that infraction itself can no longer be the ordinary measure of the lawfulness of enforcement." Id. We therefore find the violation in the present case no more hypothetical or tenuous than the offense for which the police stopped a second vehicle in United States v. Smith after observing an air freshener hanging from the vehicle's rear view mirror in apparent violation of state law prohibiting material obstructions between the driver and the windshield, id., 80 F.3d at 219, or the violations in United States v. Williams, 106 F.3d 1362, 1364 (7th Cir.1997), in which the police officer observed the defendant's vehicle signal a left turn 30 feet from an intersection instead of the 100 feet required by law, and then stop slightly forward of the stop sign at the intersection, again in violation of state law which required a stop at a point "nearest the intersecting roadway...." Federal and state jurisprudence in this area makes plain that the objective standard of Whren "is indifferent to the relatively minor nature of the traffic offense." Williams, 106 F.3d at 1365.
Moreover, even if this Court were inclined under other circumstances to adopt a threshold approach to Whren below which an observed traffic violation appears too slight or technical to afford a reasonable basis for interfering with a vehicle's freedom of movement, we agree with the trial court in this case that, giving due deference to Corporal Magee's experience in the field, the sudden and inexplicable veering of the Toyota to the fog line at that hour of the morning provided the officer with a "`minimal level of objective justification ....'" required for an investigatory stop. State v. Huntley, 97-0965, p. 3 (La.3/13/98), 708 So.2d 1048, 1049 (quoting United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989)). A vehicle need not leave its lane to provide reasonable suspicion by reason of its erratic movements that the driver may be impaired or intoxicated. See State v. Moran, 667 P.2d 734, 735 (Ak.App.1983) (observation of defendant's vehicle as it touched the center line of a divided highway and then drifted over to the right hand fog line three times within ½ mile provided reasonable suspicion driver was impaired or intoxicated).
Corporal Magee therefore acted lawfully in stopping respondent and in conducting a routine driver's license and vehicle registration inspection while engaging the vehicle's occupants in conversation. State v. Lopez, 00-0562, p. 3 (La.10/30/00), 772 So.2d 90, 92-93. Apart from the question of whether and when respondent may have given the officer consent to search his vehicle, the passenger's admission that a gun was in the car gave the officer an articulable suspicion that either respondent or his passenger could gain control of a weapon. United States v. Boden, 854 F.2d 983, 994 (7th Cir.1988); State v. Smith, 115 Wash.2d 775, 785, 801 P.2d 975, 981 (1990). The officer had previously determined that respondent had two prior felony arrests, one for a crime of violence. La. R.S. 14:2(13)(d). He was therefore entitled to conduct a self-protective search of the vehicle's interior for the firearm. Michigan v. Long, 463 U.S. 1032, 1049-50, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983) ("[T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on `specific and articulable facts, *1058 which taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.") (quoting Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)). Corporal Magee was therefore lawfully inside the vehicle when he detected the distinct odor of marijuana which he, and his partner Edwards, immediately recognized from their training and experience. The officers thereby acquired probable cause to search the vehicle's interior for the contraband, State v. Delgado, 411 So.2d 7, 10 (La.1982), and exigent circumstances arising from the stop of the car on the open road excused the warrant requirement. Pennsylvania v. Labron, 518 U.S. 938, 940, 116 S.Ct. 2485, 2487, 135 L.Ed.2d 1031 (1996).
The trial court therefore ruled correctly in denying respondent's motion to suppress. However, in brief and during oral argument in this Court, respondent raised for the first time in this case a second claim as a basis for vacating his conviction and sentence. According to respondent's present counsel, who enrolled in this case after we granted the state's application to review the decision below, respondent's retained trial attorney, who did not personally conduct the hearing on the motion to suppress but represented respondent on his guilty plea, also represents the St. Tammany Parish Sheriff's Office, the police department responsible for arresting respondent. Respondent argues that this dual representation placed his trial attorney under the tug of divided loyalties and resulted in ineffective assistance of counsel reflected, among other instances of substandard performance, by counsel's recommendation that respondent plead guilty under a sentencing cap which did not provide a firm sentencing commitment.
Respondent did not raise this claim in the court of appeal but he was represented at that time by the same attorney who recommended that he enter his conditional guilty plea. Under these circumstances, we deem it appropriate to address this claim while the case remains pending on direct review. See State v. Wille, 559 So.2d 1321 (La.1990) (conditionally affirming the defendant's conviction and sentence and remanding for an evidentiary hearing on whether counsel rendered ineffective assistance of counsel as the result of a conflict of interest). Accordingly, the decision of the court of appeal is reversed, respondent's conviction and sentence are conditionally affirmed, and this case is remanded to the district court for purposes of conducting an evidentiary hearing on the question of whether respondent's trial counsel labored under an actual conflict of interest which adversely affected his performance. Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Respondent may appeal from any adverse ruling on the conflict issue.
JUDGMENT OF THE COURT OF APPEAL REVERSED; CONVICTION AND SENTENCE CONDITIONALLY REINSTATED; CASE REMANDED.
JOHNSON, J., dissents and would affirm the decision of the court of appeal.