STATE OF LOUISIANA,
v.
BRIAN KEITH BICKHAM.
No. 2009 KA 0825.
Court of Appeals of Louisiana, First Circuit.
October 23, 2009.
Not Designated for Publication
WALTER P. REED, District Attorney, KATHRYN W. LANDRY, Counsel for Appellee, State of Louisiana.
PRENTICE L. WHITE, Counsel for Defendant/Appellant, Brian Keith Bickham.
Before: CARTER, C.J., GUIDRY and PETTIGREW, JJ.
CARTER, C.J.
The defendant, Brian Keith Bickham, was charged by bill of information with one count of felon in possession of a firearm, a violation of La. R.S. 14:95.1, and entered a plea of not guilty. He moved to suppress the evidence to be used by the State as seized without a search warrant or under an exception to the search warrant requirement. After a hearing, the motion was denied. Following a jury trial, he was found guilty as charged by unanimous verdict. He was sentenced to ten years at hard labor without benefit of probation, parole, or suspension of sentence. He now appeals, contending that the trial court erred in denying the motion to suppress evidence and erroneously instructed the jury. For the following reasons, we affirm the conviction and sentence.

FACTS
On March 21, 2006, Slidell Police Department Officer Brian Marquet conducted a traffic stop for non-functioning brake lights of a vehicle driven by James Bickham, Jr., on U.S. Highway 11 and 1-12. Billy Washington was a passenger in the front of the vehicle, and the defendant was seated behind the driver. The area was dark and a known high-crime area with a history of shootings, stabbings, and drug offenses. James indicated he did not have a driver's license. Officer Marquet ordered James out of the vehicle and patted him down for weapons. He felt a small bulge in James's left, front, pants pocket, and it was "immediately apparent" that the bulge was marijuana. He removed the package and discovered it was in fact marijuana. Officer Marquet handcuffed James and put him into the back of the police car.
Officer Marquet then ordered the defendant to exit the vehicle. Thereafter, as Deputy Ripoll arrived at the scene, Officer Marquet ordered Washington to exit the vehicle. Deputy Marquet spoke to Washington, and Deputy Ripoll began searching James's vehicle for weapons for "officer's safety." Neither Washington nor the defendant was handcuffed.
Deputy Ripoll discovered a loaded 9mm handgun under the rear portion of the driver's seat, in the area where the defendant had been seated. At the time of the weapon's discovery, the defendant was standing in front of Officer Marquet's car. As Officer Marquet was placing the gun in his car for safety reasons, the defendant stated that the weapon belonged to him. Officer Marquet then advised the defendant, James, and Washington of their Miranda[1] rights and asked them who owned the weapon. The defendant again stated he owned the weapon. James and Washington stated that they did not own the weapon. A subsequent computer-check indicated the defendant was a convicted felon, and he was arrested.[2]
In his testimony at trial, the defendant did not deny that he stated the weapon belonged to him. He claimed, however, that the weapon actually belonged to his cousin, Candace Atkinson/Candace Atkins, and that he had no knowledge that she had placed the weapon in James's car when she had been in the car earlier that day. The defendant claimed he only stated that the weapon belonged to him to protect James and Washington.

MOTION TO SUPPRESS
In assignment of error number 1, the defendant argues the search of James's vehicle was illegal under Arizona v. Gant, ___ U.S. ___, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009) because James had been handcuffed and placed in a police car and because there was no evidence to suggest that the defendant or the other passenger posed any threat to either officer. He does not separately challenge the trial court's denial of his motion to suppress his inculpatory statement/confession.
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution protect persons against unreasonable searches and seizures. A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained. La. Code Crim. P. art. 703A. See also Brendlin v. California, 551 U.S. 249, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007) (holding that a passenger is seized during a traffic stop of the driver, and thus, may challenge the constitutionality of the stop). A trial court's ruling on a motion to suppress the evidence is entitled to great weight because the district court had the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Jones, XXXX-XXXX (La. App. 1 Cir. 11/8/02), 835 So.2d 703, 706, writ denied, 2002-2989 (La. 4/21/03), 841 So.2d 791.
A three-tiered analysis governs the Fourth Amendment's application to interactions between citizens and police. At the first tier, mere communications between officers and citizens implicate no Fourth Amendment concerns where there is no coercion or detention. State v. Caples, 2005-2517 (La. App. 1 Cir. 6/9/06), 938 So.2d 147, 154, writ denied, 2006-2466 (La. 4/27/07), 955 So.2d 684.
At the second tier, the investigatory stop recognized by the United States Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the police officer may briefly seize a person if the officer has an objectively reasonable suspicion, supported by specific and articulable facts, that the person is, or is about to be, engaged in criminal conduct or is wanted for past criminal acts. Louisiana Code of Criminal Procedure article 215.1A provides that an officer's reasonable suspicion of crime allows a limited investigation of a person. However, reasonable suspicion is insufficient to justify custodial interrogation even though the interrogation is investigative. Caples, 938 So.2d at 154.
Lastly, at the third tier, a custodial "arrest," the officer must have "probable cause" to believe that the person has committed a crime. Louisiana Code of Criminal Procedure article 213(3) uses the phrase "reasonable cause."[3] The "probable cause" or "reasonable cause" needed to make a full custodial arrest requires more than the "reasonable suspicion" needed for a brief investigatory stop. Caples, 938 So.2d at 154.
As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. The standard is a purely objective one that does not take into account the subjective beliefs or expectations of the detaining officer. Although they may serve, and may often appear intended to serve, as the prelude to the investigation of much more serious offenses, even relatively minor traffic violations provide an objective basis for lawfully detaining the vehicle and its occupants. State v. Waters, XXXX-XXXX (La. 3/12/01), 780 So.2d 1053,1056 (per curiam).
A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). There is ample justification, therefore, for a search of the arrestee's person and the area within his immediate control  construing that phrase to mean the area from which he might gain possession of a weapon or destructible evidence. Chimel, 395 U.S. at 763, 89 S.Ct. at 2040.
In Gant, the police discovered cocaine in the pocket of a jacket on the backseat of Gant's car after arresting him for driving with a suspended license and after handcuffing and locking him in the back of a police car. Gant, ___ U.S. at ___, 129 S.Ct. at 1714. The court in Gant held that New York v. Belton, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981) (holding that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of the automobile and any containers found within the passenger compartment) did not authorize a vehicle search incident to a recent occupant's arrest after the arrestee had been secured and could not access the interior of the vehicle. Gant, ___ U.S. at ___, 129 S.Ct. at 1714. The court also held that the search was unreasonable because police could not reasonably have believed either that Gant could have accessed his car at the time of the search or that evidence of the offense for which he was arrested might have been found therein. Gant, ___ U.S. at ___, 129 S.Ct. at 1719. The court, however, expressly recognized the continuing viability of Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). Gant, ___ U.S. at ___, 129 S.Ct. at 1721.
The court in Long held that, under the circumstances presented there, a protective search of the passenger compartment of the vehicle was reasonable under Terry. Long, 463 U.S. at 1035, 103 S.Ct. at 3473. Deputies Howell and Lewis had been on patrol in a rural area when, shortly after midnight, they observed a car driving erratically and at excessive speed. The deputies then observed the car swerve off into a ditch. Long, the only occupant of the car, met the officers at the rear of the car, leaving the driver's-side door open. Long, 463 U.S. at 1035-1036, 103 S.Ct. at 3473. He had to be repeatedly asked to produce his operator's license, and when asked for the vehicle registration, he began walking to the open door of the vehicle. Both officers saw a large hunting knife on the floorboard of the driver's side of the car. A subsequent Terry protective pat-down of Long revealed no weapons. Deputy Howell then shined his flashlight into the vehicle and noticed something protruding from under the armrest on the front seat. When he investigated, he saw an open pouch on the front seat, containing suspected marijuana. Long was arrested for possession of marijuana, and the officers decided to impound his vehicle. When they opened the trunk, which did not have a lock, they discovered 75 pounds of marijuana. Long, 463 U.S. at 1036,103 S.Ct. at 3474.
The court in Long noted that, "Just as a Terry suspect on the street may, despite being under the brief control of a police officer, reach into his clothing and retrieve a weapon, so might a Terry suspect in Long's position break away from police control and retrieve a weapon from his automobile." Long, 463 U.S. at 1051, 103 S.Ct. at 3482. Further, the court noted, "if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside." Long, 463 U.S. at 1051-1052, 103 S.Ct. at 3482. The court also noted that the suspect might be permitted to reenter the vehicle before the Terry investigation was over, and thus, again would have access to weapons in the car. Long, 463 U.S. at 1052, 103 S.Ct. at 3482. The court stressed that "a Terry investigation ... involves a police investigation `at close range,' when the officer remains particularly vulnerable in part because a full custodial arrest has not been effected, and the officer must make a `quick decision as to how to protect himself and others from possible danger..Id. (citation omitted).
Prior to trial in the instant case, the defense moved to suppress the evidence to be used by the State as seized without a search warrant or under an exception to the search warrant requirement. Following a hearing, the motion was denied. The court noted that the vehicle had been stopped based on probable cause, and the driver had acknowledged that he had no driver's license. The court noted that the driver was placed under arrest and, during a pat-down for weapons, marijuana was located in his pocket. The court concluded that the stated facts "alerted" the officers.[4]
There was no abuse of discretion in the denial of the motion to suppress evidence. The defendant's argument that the search of the vehicle was unreasonable is based on the elimination of any threat from James after he was handcuffed and secured in the back of a police car. The defendant and Washington, however, still posed a threat to the deputies. In Gant, the vehicle search was conducted after five officers had secured three arrestees. Gant, ___ U.S. at ___, 129 S.Ct. at 1719. In the instant case, however, the defendant and Washington were neither handcuffed nor secured in police vehicles at the time of the search. Further, while the court in Gant held that an evidentiary basis for the search of the passenger compartment was lacking due to Gant's arrest for driving with a suspended license, it specifically distinguished cases, such as the instant case, involving drug offenses. Id.
In the instant case, the traffic stop of the vehicle driven by James, and in which the defendant was a passenger, was supported by probable cause to believe that James had violated La. R.S. 32:319A. See Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (holding that a temporary detention of a motorist upon probable cause to believe that he has violated the traffic laws does not violate the Fourth Amendment's prohibition against unreasonable seizures, even if a reasonable officer would not have stopped the motorist absent some additional law enforcement objective). Deputy Marquet legally ordered James out of the vehicle during the traffic stop. See Pennsylvania v. Minims, 434 U.S. 106, 109-111, 98 S.Ct. 330, 332-334, 54 L.Ed.2d 331 (1977) (holding that once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures). Thereafter, while patting down James for weapons under Terry, Officer Marquet felt a bulge in James's pocket, which he recognized as marijuana. If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context. Minnesota v. Dickerson, 508 U.S. 366, 375-376, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334 (1993). "[immediately apparent" within the meaning of Dickerson requires no more than probable cause to associate the property with criminal activity. See Texas v. Brown, 460 U.S. 730, 741-742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983). Officer Marquet also legally ordered the defendant and Washington out of the car pending completion of the stop. See Maryland v. Wilson, 519 U.S. 408, 414-415, 117 S.Ct. 882, 886, 137 L.Ed.2d 41 (1997) ("danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car. While there is not the same basis for ordering the passengers out of the car as there is for ordering the driver out, the additional intrusion on the passenger is minimal."). The subsequent protective search of the passenger compartment was reasonable because the officers were outnumbered by the driver and occupants of the car; drugs had been found on the driver of the car; the defendant and Washington were neither handcuffed nor secured in police cars, and thus could access any weapons in the car; and the area was poorly lit, and known for narcotics activity, shootings, and stabbings. Following the discovery of the gun in the area where the defendant had been seated, the defendant voluntarily stated that the gun belonged to him.
This assignment of error is without merit.

IMPROPER JURY INSTRUCTION
The defendant was charged with being a felon in possession of a firearm. In assignment of error number 2, the defendant argues the trial court erroneously instructed the jury on the offense of distribution of cocaine. Citing to State v. Thomas, 427 So.2d 428 (La. 1983) (on rehearing), the defendant suggests this court should review this assignment of error despite defense counsel's failure to object.
The record indicates that while correctly instructing the jury on the charged offense, the trial court also stated the following:
That the defendant knowingly and intentionally distributed a substance which was in fact cocaine.
RESPONSIVE VERDICTS
The defendant is charged in Count I with Distribution of Cocaine.
In order to convict the defendant, you must find beyond a reasonable doubt that the State proved every element of Distribution of Cocaine against the defendant.
If you are not convinced beyond a reasonable doubt that the defendant is guilty of the charge against him, you may find the defendant guilty of a lesser offense, if you are convinced beyond a reasonable doubt that the defendant is guilty of a lesser offense.
The following offenses are lesser included offenses of the charge of Distribution of Cocaine:
ATTEMPTED DISTRIBUTION OF COCAINE
POSSESSION OF COCAINE
ATTEMPTED POSSESSION OF COCAINE
ATTEMPT
Attempted Distribution of cocaine is the attempt to commit the crime of Distribution of Cocaine.
A person who has a specific intent to commit a crime who does or omits an act for the purpose of and tending directly toward accomplishing his object is guilty of an attempt to commit the crime intended.
I have already defined "specific intent" for you. Please use that definition in your deliberations. It is immaterial whether, under the circumstances, the defendant would have actually accomplished his purpose.
Mere preparation to commit a crime is not sufficient to constitute an attempt.
In the instant case, the defendant argues that failure to object to the erroneous jury instruction is immaterial under Thomas. Thomas was convicted of first degree murder of Elijah Dickson on July 11, 1979. Thomas, 427 So.2d at 430-431. On appeal, noting that La. R.S. 14:30 had become effective twelve days before the offense was committed, the court found merit in the claim that the State had failed to prove any of the circumstances enumerated in the statute and required in addition to proof of specific intent to kill or to inflict great bodily harm. Thomas, 427 So.2d at 432. The court, however, found that all of the elements of the lesser and included offense of second degree murder had been proven, and thus, set aside the conviction for first degree murder and remanded to the trial court with instructions to enter a judgment of guilty of second degree murder. Id.
On rehearing in Thomas, the defendant argued that his conviction should be reversed and the matter remanded for a new trial because the trial court had erroneously conducted the trial and instructed the jury on a superseded first degree murder statute. Id. The court, however, rejected those claims, holding that the alleged irregularities could not be availed of on appeal because they were not objected to at the time of the occurrence and were not discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence under La. Code Crim. P. arts. 841 and 920. Thomas, 427 So.2d at 432-433.
Defense counsel in the instant case also failed to object to the erroneous jury instruction. Accordingly, he is precluded from seeking reversal of the conviction on the basis of the erroneous jury instruction. See La. Code Crim. P. arts. 801C, 841 A, 920(2); Thomas, 427 So.2d at 432-433.
This assignment of error is without merit.

REVIEW FOR ERROR
Initially, we note that our review for error is pursuant to La. Code Crim. P. art. 920, which provides that the only matters to be considered on appeal are errors designated in the assignments of error and "error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." La. Code Crim. P. art. 920(2).
The trial court failed to impose the mandatory fine of not less than one thousand dollars nor more than five thousand dollars. See La. R.S. 14:95.IB. Although the failure to impose the fine is error under Article 920(2), it certainly is not inherently prejudicial to the defendant. Because the trial court's failure to impose the fine was not raised by the State in either the trial court or on appeal, we are not required to take any action. As such, we decline to correct the illegally lenient sentence. See State v. Price, 2005-2514 (La. App. 1 Cir. 12/28/06), 952 So.2d 112, 123-125 (en banc), writ denied, XXXX-XXXX (La. 2/22/08), 976 So.2d 1277.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966).
[2] The State and the defense stipulated that on February 20, 2001, the defendant was convicted of attempted armed robbery.
[3] The "reasonable cause" standard of Article 213(3) is equivalent to "probable cause" under the general federal constitutional standard. To read Article 213 as allowing an arrest on less than probable cause would put the article afoul of the Fourth Amendment. Caples, 938 So.2d at 154 n. 3.
[4] Gant was decided after the filing of the motion to suppress and after trial in this matter. Accordingly, the decision was not referenced by the parties or the court below. However, because the case was decided while this case was on direct review, we will consider the defendant's arguments under Gant. See Whorton v. Bockting, 549 U.S. 406, 416, 127 S.Ct. 1173, 1180, 167 L.Ed.2d 1 (2007) ("an old rule [announced in a United States Supreme Court opinion] applies both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review.").