EDWIN A. LOMBARD, Judge.
| tPursuant to State v. Crosby, 838 So.2d 584 (La.1976),[1] the defendant, Sherman Reed, appeals his conviction and sentence for possession with the intent to distribute hydrocodone, asserting that the trial court erred in denying his motion to suppress. After review of the record in light of the applicable law and arguments of the parties, we affirm the judgment of the trial court.

Relevant Procedural History

A prescription bottle containing hydro-codone was seized from the floor board on the front passenger’s side of the defendant’s vehicle after he was stopped for a traffic violation. He was charged by bill of information with distribution of hydroco-done in violation of La. Rev.Stat. 40:967(A) and, after the trial court denied his motion to suppress[2], entered a Crosby plea. The court sentenced him to serve two years at hard labor, then suspended the sentence and placed the defendant on two years active probation. The court also imposed fines and fees of $500 to the Judicial Expense Fund and $191.50 in court costs.
| ^Standard of Review
When the legality of evidence seized without a warrant is put at issue by a motion to suppress, the State bears the burden of proving admissibility, La.Code Crim. Proc. art. 703(D), and we review that ruling under the abuse of discretion standard. See State v. Wells, 2008-2262, p. 4 (La.7/6/10), 45 So.3d 577, 580.

Applicable Law

The Fourth Amendment of the United States Constitution and Article I, Section 5 of the Louisiana Constitution protect persons from unreasonable searches and seizures. Police may make “an investigatory stop only if it is based upon a reasonable, articulable suspicion that the individual has engaged in, is engaging in, or is about to engage in criminal activity.” State v. Dobard, 01-2629, p. 2 (La.6/21/02), 824 So.2d 1127, 1129 (emphasis added); see also La.Code Crim. Proc. art. 215.1 (a police officer “may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.”); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (the right to make such an investigatory stop must be based upon reasonable suspicion that the individual has committed, or is about to commit, an offense). Generally, “the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.” Whren v. U.S., 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (citations omitted). The standard for a traffic stop is “a purely objective one” that does not require an inquiry into “the subjective beliefs or expectations of the detaining officer.” State v. Waters, 00-0356, p. 4 (La.3/12/01), 780 So.2d 1053, 1056 (citing Whren, 517 U.S. at 813, 116 S.Ct. 1769). Although traffic violations may serve and “often appear intended to serve, as the prelude to the investigation of much more serious of *1264 fenses, even relatively minor traffic violations provide an objective basis for lawfully detaining the vehicle and its occupants.” Waters, supra (citations omitted). It is axiomatic that “if a vehicle is readily mobile, there is no difference between seizing the car while obtaining a search warrant and immediately searching the vehicle without a warrant.” Waters, supra (citing State v. Thompson, 2002-0333 (La.4/9/03), 842 So.2d 330). Accordingly, if there is probable cause to search and the vehicle is readily mobile, even if stationary at the time the search proceeded, any evidence will be considered constitutionally seized. See Waters, supra (citing Maryland v. Dyson, 527 U.S. 465, 467, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999) and State v. Anderson, 2006-1031 (La.App. 4 Cir. 1/17/07), 949 So.2d 544).
Probable cause means “a fair probability that contraband ... will be found.” Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Whether probable cause exists must be judged by the probabilities and practical considerations of everyday life on which average people, and particularly average police officers, can be expected to act. State v. Fisher, 97-1133, p. 8 (La.9/9/98), 720 So.2d 1179, 1184 (citing State v. Raheem, 464 So.2d 293, 296 (La.1985)).

Relevant Facts

The following evidence was adduced at the hearing on the defendant’s motion to suppress. The sole witness, Detective Leonard Standeford of the New Orleans Police Department (NOPD), testified that on September 7, 2010, he was working in the Sixth District with his partner, Officer Virgil Landry, when they observed the defendant’s vehicle stopped in the middle of First Street, a one-way street, near its intersection with Prieur Street. The defendant, in the driver’s seat, |4was speaking with a male who was standing outside of his car. Because the defendant’s car was blocking the lane of traffic, Officer Landry (who was driving the marked police car) activated the overhead lights and the siren in order to cite the defendant for the traffic violation. The defendant immediately placed his vehicle into park, exited the car, and approached the police officers to speak with them.
After the officers advised the defendant of the reason for the stop, they asked him for his driver’s license and the paperwork for the vehicle. The defendant produced his driver’s license and indicated that the vehicle registration and insurance papers were in the vehicle. Accordingly, the defendant returned to his vehicle to retrieve the paperwork. Detective Standeford followed him and, as the defendant leaned into the vehicle from the driver’s side, situated himself to observe both the defendant and the glove compartment to insure that the defendant did not retrieve a weapon in the act of obtaining the vehicle documents. Thus, Detective Standeford observed the defendant reach into his pocket with his left hand and pull out a bottle of pills which he dropped onto the front passenger-side floorboard. Because the defendant’s actions appeared suspicious, Detective Standeford ordered the defendant out of the vehicle. Officer Landry detained the defendant at the rear of the defendant’s car while Detective Standeford retrieved the pill bottle from the floorboard. He discovered that the bottle contained fifty hydrocodone pills and bore a prescription label with the name Leon Andrews. The defendant volunteered that the bottle belonged to his uncle, who he said must have left it in the car.
Accordingly, based on the discovery of the pill bottle, the officers arrested the defendant for possession of hydrocodone. Officer Landry advised the defendant of his rights, which the defendant acknowl *1265 edged that he understood, and | ¡¡placed him into the police car. The officers then drove the defendant to the Sixth District station to complete paperwork and the booking process. At the station, Officer Landry again asked the defendant about the pills. The defendant said that “he was going to come clean, and that he was selling the pills for his friend, Leon Andrews.”
On cross-examination, Detective Stande-ford conceded that he did not have prior knowledge of the defendant or observe any suspicious transactions between the defendant and the man standing next to his car. Detective Standeford also acknowledged that the defendant appeared cooperative when the officers stopped him and that he could not see the name on the discarded pill bottle or ascertain its contents when he saw it on the floorboard.

Discussion

In his sole assignment of error, the defendant asserts that the trial court erred when it denied his motion to suppress the evidence and that his statements must be suppressed as tainted fruit of the alleged illegal seizure of the physical evidence and ensuing arrest. He argues that the bottle could not be lawfully seized because it was not, without closer inspection, immediately apparent to be contraband. Further, he argues that the police officers lacked probable cause to search his vehicle or to arrest him prior to seizing the pill bottle from his car.
It is undisputed that the defendant was stopped for a traffic violation and, thus, the initial stop was clearly reasonable. Upon the defendant’s return to his vehicle for the purported purpose of retrieving his registration documents, it was not unreasonable or an intrusion into the defendant’s expectations of privacy for Detective Standeford to position himself so as to observe the defendant’s movements and insure his own and his partner’s safety. Thus, the detective was in |fia position to see the defendant, under the guise of reaching into the glove compartment, surreptitiously withdraw the pill bottle from his pants pocket and drop it on the floorboard of the vehicle.
Evasive behavior, although not necessarily indicative of wrongdoing, is certainly suggestive of such and, accordingly, is a “pertinent factor in determining reasonable suspicion.” State v. Morgan, 09-2352, p. 5 (La.3/15/11), 59 So.3d 403, 406 (citing U.S. v. Brignoni-Ponce, 422 U.S. 873, 885, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); Florida v. Rodriguez, 469 U.S. 1, 6, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984); U.S. v. Sokolow, 490 U.S. 1, 8-9, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)). Moreover, the U.S. Supreme Court has explicitly cautioned that, in reviewing the propriety of an officer’s conduct, “the determination of reasonable suspicion must be based on commonsense judgments and inferences of human behavior” because “courts do not have available empirical studies dealing with inferences drawn from suspicious behavior” and, therefore, reviewing courts “cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists.” Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (citations omitted).
Accordingly, we conclude that Detective Standeford was justified in suspecting that the defendant was involved in criminal activity when he saw him drop the pill bottle surreptitiously on the floorboard and, therefore, investigating further. Furthermore, exigent circumstances arising from the detention of the vehicle on the open road excuse the lack of a warrant. Pennsylvania v. Labron, 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996); see also State v. Tatum, 466 So.2d 29, 31 (La.1985).

*1266
Conclusion

After review of the record in light of the applicable law and argument of the parties, we do not find that the trial court abused its discretion in denying the |7defendant’s motion to suppress. Accordingly, the defendant’s conviction and sentence are affirmed.
AFFIRMED.
LOVE, J., dissents and assigns reasons.

. The defendant also entered his plea pursuant to North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

. The defendant initially sought review of that ruling on application for supervisory writ but this Court declined to exercise its supervisory jurisdiction, stating that the defendant had an adequate remedy on appeal. State v. Reed, unpub., 2010-1687 (1/18/11), writ denied 2011-0211 (La.3/25/11), 61 So.3d 670.