744 So.2d 641 (1999)
STATE of Louisiana, Respondent,
v.
Steve Allen McVAN, Applicant.
No. 32,434-KW.
Court of Appeal of Louisiana, Second Circuit.
March 11, 1999.
*642 Kelly, Townsend & Thomas By Thomas Taylor Townsend, Natchitoches, Counsel for Steve Allen McVan.
Richard Ieyoub, Attorney General, William R. Jones, District Attorney, Counsel for State of Louisiana.
Before NORRIS, C.J., and BROWN and DREW, JJ.
WRIT DENIED.
At question here is whether or not the initial detention of a motorist by Deputy Longino violates Art. I, Section 5 of the Louisiana Constitution which establishes our citizens' right of privacy or "the right to be left alone." Defense counsel incorrectly argues that probable cause was required for the stop. For over three decades, the standard required for an investigative detention is the much lower "reasonable suspicion of criminal activity" standard articulated in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
Admittedly in this stipulated fact scenario, the ice could not be any thinner in supporting a finding of reasonable suspicion of criminal activity. That being said, however, we expressly decline to follow the Third Circuit's ruling in State v. Vaughn, 448 So.2d 915 (La.App. 3d Cir.1984), finding that expression of our fellow judges unduly restrictive on the right of law enforcement to investigate crime and also to protect and serve. Vaughn encourages timidity in law enforcement, sacrificed at the altar of the right of privacy, along with the lives of innocent motorists, who should be protected by our peace officers. It is conceded here that the motorist never left his lane, though he did travel from the fog line to the center line, back to the center of the lane and then to the center line again. He was traveling 10 miles under the speed limit, which is somewhat unusual.
At this point Deputy Longino turned on his lights and stopped the vehicle. This could have been a two-minute encounter, while the officer simply checked on the driver's health or his possible weariness. In this case, what developed was the officer's confirmation of the defendant's obvious and significant impairment.
Mr. McVan is not a champion of individual rights; he is obviously someone with a significant alcohol problem who needs treatment and punishment for his reckless disregard of the rights of others.
Because Deputy Longino took action when he did, the defendant will live to see another day, and innocent bystanders will also have that privilege. Certainly had Deputy Longino waited until Mr. McVan plowed into a bus full of school children, then there would not only have been reasonable suspicion of criminal activity, but also probable cause. There also would have been needless tragedy, which this quick-thinking officer possibly prevented.
We do note error patent, in that the potential jail time to be served exceeds the statutorily allowed six months.
The ruling of the lower court is correct. The writ is DENIED.
NORRIS, C.J. dissents with written reasons.
*643 NORRIS, Chief Judge, dissenting.
The only evidence introduced in this case was a one-page stipulation of fact, consisting of Officer Longino's handwritten "Uniform DWI Arrest Report." This report states only that McVan, driving 45 mph in a 55 mph zone, "drifted" within his own lane without once crossing the center or fog line. This happened twice within an undisclosed space of time. Because Officer Longino did not testify, there is absolutely no evidence regarding the surrounding circumstances that might have actuated his decision to stop McVan on such scanty observations.
On these facts, the case is clearly regulated by State v. Vaughn, 448 So.2d 915 (La.App. 3 Cir.1984). Vaughn found insufficient reasonable suspicion to stop a driver whose two left tires crossed the center line for about six inches, and who "swayed" within his lane several times. The only evidence as to McVan's pre-stop conduct was that he was obeying the speed limit and "drifted" while remaining completely within his own lane of travel.
The majority admits "the ice could not be thinner," but in the effort to salvage this illegal stop and Intoxilyzer reading it takes the extraordinary step of saying the court will simply no longer follow Vaughn. Such a statement is extraordinary because in the nearly 15 years since Vaughn's rendition, this court has consistently relied upon it as the baseline of articulable conduct to create reasonable suspicion. See, e.g., State v. Downer, 460 So.2d 1184 (La. App. 2 Cir.1984); State v. Eppinette, 478 So.2d 679 (La.App. 2 Cir.1985); State v. Jackson, 629 So.2d 1374 (La.App. 2 Cir. 1993), writ denied 637 So.2d 1046 (1994); State v. Inzina, 31,439 (La.App. 2 Cir. 12/9/98), 728 So.2d 458. Every other court to address the issue has likewise upheld Vaughn as the minimum standard for reasonable suspicion to stop. See, e.g., State v. Shoemaker, 569 So.2d 169 (La.App. 1 Cir.1990), writ denied 572 So.2d 73 (1991); State v. Bradley, 504 So.2d 1144 (La.App. 5 Cir.1987); State v. Michiels, 495 So.2d 409 (La.App. 3 Cir.), writ denied 498 So.2d 15 (1986). Although each of these cases found that the defendants' driving therein was more erratic and indicative of criminal conduct than in Vaughn, and thus distinguished from Vaughn, the effect has been to retain Vaughn as the minimum requirement for a reasonable stop. Today's ruling casually dismisses 15 years of jurisprudence constante.
Even though the majority may invoke speculative public safety concerns, the end does not justify the means. I am not persuaded that we should abandon the sensible, conservative course set out in Vaughn. To approve the instant stop is tantamount to approving stops on no articulable suspicion at all. The one-page handwritten report is inadequate. I would grant McVan's motion to suppress, reverse the conviction and remand the case for further proceedings consistent with the law.