DREW, J.,
dissents to the denial of application for rehearing and assigns reasons.
hi agree with Judge Stewart that a rehearing should have been granted.
An individual law officer may make an investigative detention predicated upon the officer developing reasonable suspicion of criminal activity. The officer must be able to articulate the specific factors upon which the stop was made, and the factors must be particularized as to the specific defendant stopped.
This well-meaning Louisiana Tech University Police Officer may well have saved Mr. Garrison’s life, or the life of an innocent motorist.
Just because it turned out that Mr. Garrison was impaired, however, does not *889 change the fact that this particular stop was unsupported by reasonable suspicion of criminal activity, which is the legal requirement for any detention, whether a traffic infraction or a crime proscribed in Titles 14, 40, or 56.[1] A much higher burden, probable cause, is required for arrest, or in the case of a traffic matter, for the issuance of a citation (which is normally the case, in lieu of arrest, for most Title 32 violations).
The speculation that someone’s tires were spinning somewhere near campus while the Louisiana Tech Police Officer was on his way to campus, is too remote to justify this particular vehicular stop. Without doubt this is a close case, but as we’re charged with examining de novo the learned trial court’s determination of reasonable suspicion, I cannot quite get this one past the sniff test.
| ¡.The initial stop (at U.S. Hwy. 80) was illegal.[2] Consequently, nothing flowing from this detention can be used against the defendant, absent proof of sufficient attenuation from the illegal stop. See United States v. Jaquez, 421 F.3d 338 (5th Cir.8/15/05), where a report of a generic red car being involved in a drive-by shooting led an officer to stop a generic red car in the same general area 15 minutes later. The Fifth Circuit found that the red car was stopped without sufficiently particularized reasonable suspicion of criminal activity.
I find unpersuasive the defendant’s reliance on State v. Hawsey, 377 So.2d 338 (La.11/20/79), a case decided more than a quarter of a century ago by the Louisiana Supreme Court. Nonetheless, in Hawsey, the trooper at least knew which car was spinning its wheels. Here, there was only rank speculation that this was, in fact, the vehicle in question. Had the officer known this was the offending vehicle, and had the vehicle been on a public street on or immediately contiguous to campus, I believe the stop would have been good as gold, as spinning the tires would at least have amounted to reasonable suspicion, if not probable cause, that the vehicle was committing the offense of careless operation, La. R.S. 32:58.
Even less persuasive is the majority’s reliance upon and extensive quoting from Illinois v. Lidster, 540 U.S. 419, 124 S.Ct. 885, 157 L.Ed.2d 843 (2004), which is irrelevant to our present inquiry. Lidster concerned an informational checkpoint[3] set lsup in the exact area of a fatal hit and run incident, precisely one week after the accident. By definition, a checkpoint allows stops with no suspicion of criminal activity by the driver. Likewise, there is a laundry list of tasks which must be completed in order to effectuate a valid D.W.I. checkpoint in Louisiana (advance warning to approaching motorists via signs, flares, and other indications; use of a systematic, non-random criteria for stopping motorists; guidance by supervisory personnel, preferably by written guidelines; minimal intrusion upon motorists, etc.). See State v. Jackson, 2000-0015 (La.7/6/00), 764 So.2d 64.
To follow and extend the majority’s logic, any stop of any vehicle at any time for the vaguest of reasons would be legal. To apply these facts to a checkpoint/road *890 block template is comparing apples and kumquats.
The stop in question here is simply not a check point situation. Both Lidster and Jackson are inapplicable to this inquiry, which involves the intrusion of the state, represented by Officer Sasser, into the affairs of Mr. Garrison, an individual driver — one officer, one defendant. This traffic stop was made, with only the vaguest of suspicions that Garrison may have recently spun his tires in the area of the stop. After following the motorist a short distance, the officer still observed no infraction by this motorist. Yet the stop was made. This is a long way short of reasonable suspicion of criminal activity.
The lurking jurisdictional problem could be avoided in the future if all P.O.S.T.-eertified[4] Louisiana Tech P.D. officers were commissioned by |4the Ruston Chief of Police or by the Lincoln Parish Sheriff, or both. The downside of this, of course, would be the understandable fear by the City of Ruston and the Lincoln Parish S.O. of additional civil liability stemming from the actions of these additional officers, which is a very real concern in today’s world. The upside would be that more officers would be able to protect and serve in Ruston, without splitting hairs over which street adjoins which property near what road.
Under these limited facts, this excellent officer could have called the Ruston P.D. or Lincoln S.O. to follow this car in order to observe the operation of the vehicle. Had these other officers then observed the commission of a minor traffic offense or a crime, a valid stop could have been made. U.S. v. Santiago, 310 F.3d 336 (5th Cir.2002); State v. Waters, 780 So.2d 1053 (La.2001); and State v. McVan, 744 So.2d 641 (La.App. 2d Cir.1999). Even if pretextual, the stop would have then been good. See Whren v. U.S., 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); U.S. v. Castro, 166 F.3d 728 (5th Cir.1999), cert. denied.
This would have given the police officer or deputy sheriff a brief window of time,[5] while processing the ticket, to make a point about the need for careful driving, and to observe the driver for any indicia of impairment, thereby keeping the roads safer for those law-abiding citizens who, unlike Mr. Garrison, choose not to drink and drive. As it is, under these facts, this inconsiderate and dangerous driver should have walked out of the | Bcourtroom a free man, because there was no indicia of criminality extant to support the stop.
The transcript reflects excellent courtroom work by both the lawyer for Mr. Garrison and the lawyer for the state. However, this case should have been doomed at inception. The jurisdictional question is razor-close, but a decision on that issue should not be necessary to decide this case. The officer simply made an illegal stop.
Considering the thin pre-stop observations by the officer, the initial detention (traffic stop) itself was clearly illegal, regardless of:
• where the conduct arose, or
• where the stop was made, or
*891 • what agency’s officer initiated the detention, or
• exactly where were the geographical limits of the officer’s jurisdiction within which he was empowered to act.
The motion to suppress should have been granted. Accordingly, I respectfully dissent from the majority’s denial of the defendant’s application for rehearing.

. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and La. C. Cr. P. art. 215.1.A.

. In fact, this illegal stop is constitutionally insupportable, without necessily-ef'even visiting the jurisdictional issue of the Louisiana Tech Officer’s authority to make off-campus stops.

.The purpose of the Lidster roadblock was to find any possible witnesses to the fatal hit- and-run of the previous week.

. This term refers to the Louisiana Peace Officers Standards and Training Council.

. At least one court has said (not binding in Louisiana) that a valid traffic stop, lasting no more than 17 minutes, can never be unconstitutional. U.S. v. Hernandez, 418 F.3d 1206 (11th Cir.2005).