STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

15-668

STATE OF LOUISIANA

VERSUS

DAMIEN MARQUES MCLENDON, JR.

AKA - DAMIEN M. MCLENDON, JR.

AKA - DAMIEN MCLENDON, JR.

**********

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. CR-2014-830
HONORABLE C. KERRY ANDERSON, DISTRICT JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

AFFIRMED.

James R. Lestage
District Attorney – 36th Judicial District
Richard Alan Morton
Assistant District Attorney – 36th Judicial District
P. O. Box 99
DeRidder, LA 70634-0099
Telephone:  (337) 463-5578
COUNSEL FOR:
    Plaintiff/Appellee - State of Louisiana

**Harold Dewey Register, Jr.**
**216 Rue Louis XIV**
**Lafayette, LA 70508**
**Telephone:  (337) 981-6644**
**COUNSEL FOR:**
> **Defendant/Appellant - Damien Marques McLendon, Jr.;  AKA – Damien M. McLendon, Jr.; AKA – Damien McLendon, Jr.**

**THIBODEAUX, Chief Judge.**

Defendant, Damien Marques McLendon, Jr., was indicted for possession of cocaine with intent to distribute, in violation of La.R.S. 40:967, conspiracy to distribute cocaine, in violation of La.R.S. 14:26 and La.R.S. 40:967, and obstruction of justice, in violation of La.R.S. 14:130.1. McLendon filed a motion to suppress, which was denied by the trial court. McLendon later entered a "*Crosby* plea" as to the first count, reserving the right to seek review of the denial of his motion to suppress. The State dismissed counts two and three, and McLendon was sentenced to fifteen years at hard labor.

McLendon now appeals the trial court's denial of his motion to suppress, arguing that the trial court erred when it determined that despite contradictory testimony provided by officers, that a traffic violation occurred; that merely "hitting" or "bumping" the fog line constituted a traffic violation; and that McLendon violated his probation by leaving the state of Louisiana. We disagree. For the following reasons, we affirm Defendant's conviction and the trial court's denial of Defendant's motion to suppress.

## I.

## ISSUES

We must determine:

(1)     whether the trial court erred in finding that, even in light of the contradicting testimony provided by the officers at the hearing, a traffic violation occurred.

(2)     whether the trial court erred in finding that merely "hitting" or "bumping" the fog line was sufficient to constitute a traffic violation.

(3)    whether the trial court erred in finding that McLendon violated his probation by leaving the state of Louisiana.

## II.

## FACTS AND PROCEDURAL HISTORY

On the evening of October 7, 2014, law enforcement officers in Beauregard Parish were conducting a drug interdiction operation on Highway 190 when Detective Joshua Stanford and Probation Officer Leland Hughes, in an unmarked vehicle, observed an automobile driven by Defendant Damien Marques McLendon crossing into Louisiana from Texas. Detective Stanford followed the vehicle for approximately twelve miles before he saw it "touch" the fog line. Soon thereafter, Detective Stanford informed Detective Barry Thompson, driving in a marked police vehicle and accompanied by Detective Thurman Buckley, to initiate a traffic stop for the alleged traffic violation. Thompson testified that after following McLendon for approximately thirty seconds, he also saw McLendon's vehicle "bump" the fog line. Thompson initiated a traffic stop and requested and verified McLendon's license and registration. Although no further infractions were discovered, Thompson ordered McLendon and his passenger, Carl Marzette, to exit the vehicle. Detective Thompson testified that Marzette immediately fled. In doing so, he exposed a bag of cocaine that had fallen from the passenger side of the vehicle. Marzette was ultimately detained, and he and McLendon were arrested for felony drug violations.

# III.

## STANDARD OF REVIEW

A trial court's ruling on a motion to suppress is reviewed under the manifest error standard of review for factual determinations, while applying a de novo standard of review to findings of law. *State v. Hemphill*, 41,526 (La.App.2 Cir. 11/17/06), 942 So.2d 1263, *writ denied*, 06-2976 (La. 3/9/07), 949 So.2d 441.

> When a trial court rules on a defendant's motion to suppress, the appellate court must look at the totality of the evidence presented at the hearing on the motion to suppress. The appellate court should not overturn a trial court's ruling, unless the trial court's conclusions are not supported by the evidence, or there exists an internal inconsistency in the testimony of the witnesses, or there was a palpable or obvious abuse of discretion.

*State v. Bargeman*, 98-617, p. 5 (La.App. 3 Cir. 10/28/98), 721 So.2d 964, 967, *writ denied*, 99-33 (La. 5/28/99), 743 So.2d 658.

# IV.

## LAW AND DISCUSSION

**The Occurrence of a Traffic Violation**

McLendon first argues the trial court erred in finding that a traffic violation occurred in light of the contradictory testimony of the officers. McLendon maintains that while Detectives Stanford and Thompson testified that they observed McLendon's vehicle touch or bump the fog line, Officers Hughes and Buckley, both passengers in Stanford and Thompson's vehicles respectively, testified that they did not observe a traffic violation. McLendon characterized this inconsistency as an "internal contradiction and irreconcilable conflict," and relies on *State v. Robinson*, 02-1869, p. 16 (La. 4/14/04), 874 So.2d 66, 79, *cert. denied*, 543 U.S. 1023, 125 S.Ct. 658 (2004), which concluded that "in the absence of

internal contradiction or irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a factual conclusion." While we are not in disagreement with the conclusions reached in *Robinson*, we do not find them to be applicable to this case. Here, while Detectives Stanford and Thompson testified that they witnessed McLendon's vehicle either "bump" or "touch" the fog line, Officers Hughes and Buckley testified that they did not see a traffic violation occur.

We find that although Officers Hughes and Buckley testified that they did not witness a traffic violation, their lack of knowledge does not constitute an "irreconcilable conflict" in the testimonies of the detectives and officers at the hearing. Thus, had Officers Hughes and Buckley testified that *no* traffic violation occurred, the contradiction in the testimonies would have presented an irreconcilable conflict. We, thus, do not find that the trial court abused its discretion by finding Detectives Stanford and Thompson's testimony to be credible and determining that a traffic violation occurred.

**Whether the Alleged Violation Constitutes a Traffic Violation**

McLendon heavily relies on *State v. Vaughn*, 448 So.2d 915 (La.App 3 Cir. 1984), in making the assertion that merely touching the fog line constitutes a *de minimis* violation for which one cannot justifiably be subjected to a traffic stop. However, we find that *Vaughn* is an outlier in an array of Louisiana case law whose precedent expressly advances the opposite outcome. Louisiana Revised Statutes 32:79 (a) provides that "whenever any roadway has been divided into two or more clearly marked lanes . . . [a] vehicle shall be driven as nearly as practicable *entirely* within a single lane . . . (emphasis added)." Moreover, La.Code Crim.P.

4

art. 215.1 provides that "[a] law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions." Finally, under both state and federal constitutions, law enforcement officers are entitled to make a "*Terry* Stop" of a person or vehicle when they reasonably suspect criminal activity. La.Code Crim.P. art. 215.1; *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968).

In *State v. Waters*, 00-356 (La. 3/12/01), 780 So.2d 1053, officers detained a vehicle and its occupants after the vehicle made contact with the fog line. The court determined that "even relatively minor traffic violations provide an objective basis for lawfully detaining [a] vehicle and its occupants." *Id*. at 1056. *See, e.g., State v. Richards*, 97-1182 (La.App. 5 Cir. 4/15/98), 713 So.2d 514, *writ denied*, 98-1452 (La. 10/09/98), 726 So.2d 27; *State v. Dixon*, 30,495 (La.App 2 Cir. 2/25/98), 708 So.2d 506; *State v. McVan*, 32,434 (La.App. 2 Cir. 3/11/99), 744 So.2d 641 (court determined that a traffic violation occurred when the vehicle touched the right-hand fog line). The trial court further emphasized the findings of the Supreme Court in *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769 (1996), in which the objective standard for determining the reasonableness of vehicular stops based on traffic violations was contemplated. The Supreme Court resolved that it knew of no principle "that would allow [them] to decide at what point a code of law becomes so expansive and so commonly violated that infraction itself can no longer be the ordinary measure of the lawfulness of enforcement." *Id*. at 1777. The *Waters* court also declined to adopt a threshold approach. In light of *Whren, Waters,* and their progeny, we are of the opinion that

McLendon committed a traffic violation when his vehicle touched the fog line, and, thus, officers were justified in initiating a traffic stop.

We are also inclined to discuss the legality of the length and extent of McLendon's detainment. *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330 (1977), held that a police officer may order the driver of a lawfully stopped car to exit the vehicle. *Maryland v. Wilson*, 519 U.S. 408, 408, 117 S.Ct. 882, 883 (1997), extended this rule to passengers, providing that "[a]n officer making a traffic stop may order passengers to get out of the car pending completion of the stop." Once a vehicle is detained, however, "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriquez v. United States*, 135 S.Ct. 1609, 1612 (2015). Louisiana Code of Criminal Procedure Article 215.1(D) provides:

> During detention of an alleged violator of any provision of the motor vehicle laws of this state, an officer may not detain a motorist for a period of time longer than reasonably necessary to complete the investigation of the violation and issuance of a citation for the violation, absent reasonable suspicion of additional criminal activity. However, nothing herein shall prohibit a peace officer from compelling or instructing the motorist to comply with administrative or other legal requirements of Title 32 or Title 47 of the Louisiana Revised Statutes of 1950.

While we recognize *Rodriguez*, it does not support the conclusion that McLendon was unlawfully detained. Detective Thompson testified that after verifying McLendon's documents, but before returning the documents and issuing a citation, McLendon and Marzette were asked to exit the vehicle. Detective Thompson further testified, rather significantly, that Marzette abruptly fled, exposing a bag of cocaine in the vehicle. We find that but for the actions of

6

McLendon's passenger, the detaining officers likely would not have had the reasonable suspicion required to prolong the traffic stop. Thus, although McLendon was initially detained for hitting the fog line, we find that his prolonged detainment and ultimate arrest was constitutional.

**Probation Violation**

McLendon finally argues that the trial court erred in determining that there was a probation violation. However, because we have already determined that the officers were justified in initiating a traffic stop for a traffic violation, the question of McLendon's potential parole violation is moot in relation to his initial detainment and ultimate arrest. However, we find that despite Officer Hughes' lack of knowledge, the officers were justified in initiating a traffic stop because of McLendon's status as a parolee.

Louisiana Code of Criminal Procedure Article 251.1(A) provides that "[a] law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense . . . ." Investigatory stops are thus permitted. Officer Hughes testified that parolees need permits to cross state lines, and to his knowledge at the time, McLendon did not have such a permit. Thus, having knowledge of McLendon's status as a parolee, Officer Hughes had reason to believe that McLendon was committing an offense when he saw him enter into Louisiana. Louisiana Revised Statutes 15:574.8 states in pertinent part:

> A. Parole officers shall be deemed to be peace officers and shall have the same powers with respect to criminal matters and the enforcement of the law relating thereto as sheriffs, constables, and police officers have in their respective jurisdictions. They have all the

immunities and matters of defense now available or hereafter made available to sheriffs, constables, and police officers in any suit brought against them in consequence of acts done in the course of their employment.

B. If a parole officer has reasonable cause to believe that a parolee has violated or is attempting to violate a condition of his parole and that an emergency exists, so that awaiting action by the committee under R.S. 15:574.7 would create an undue risk to the public or to the parolee, such parole officer may arrest the parolee without a warrant or may authorize any peace officer to do so.

We find that this statute granted officers the authority, had they desired, to initiate a traffic stop based on the presumed parole violation. This statute further makes clear, however, that officers had no authority to arrest McLendon for the same. Because no emergency existed that would have created an undue risk to the public or to McLendon himself, the officers could not have executed a warrantless arrest of McLendon on this basis of a suspected parole violation. Nevertheless, the trial court's ruling does not appear to be dependent on McLendon's suspected parole violation, as police testified, particularly Probation Officer Hughes, that they conducted a valid traffic stop based solely on McLendon's traffic violation.

## V.

## CONCLUSION

Accordingly, we affirm Defendant's conviction and the trial court's denial of Defendant's motion to suppress.

**AFFIRMED.**