STATE OF LOUISIANA

VERSUS

RENE FUENTES

NO. 22-KA-89

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-NINTH JUDICIAL DISTRICT COURT
PARISH OF ST. CHARLES, STATE OF LOUISIANA
NO. 20,330, DIVISION "D"
HONORABLE M. LAUREN LEMMON, JUDGE PRESIDING

November 02, 2022

**SUSAN M. CHEHARDY**
**CHIEF JUDGE**

Panel composed of Judges Susan M. Chehardy,
Hans J. Liljeberg, and John J. Molaison, Jr.

**CONVICTION AFFIRMED;**
**SENTENCE VACATED;**
**REMANDED FOR RESENTENCING**
    **SMC**
    **HJL**
    **JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
    Honorable Joel T. Chaisson, II
    Louis G. Authement

COUNSEL FOR DEFENDANT/APPELLANT,
RENE FUENTES
    Lieu T. Vo Clark

**CHEHARDY, C.J.**

Defendant-appellant, Rene Fuentes, appeals the trial court's ruling denying his motion to suppress evidence. He also contends that the sentence imposed is excessive and that the trial court erred in denying his motion to reconsider sentence. For the reasons that follow, we affirm the denial of defendant's motion to suppress as well as defendant's conviction. We pretermit discussion of defendant's second and third assignments of error related to his sentence, however, and remand for resentencing.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On June 20, 2020, law enforcement received a call from a Popeye's Restaurant in Destrehan reporting that someone driving a light-colored Buick SUV allegedly fell asleep in the drive-thru line. After arriving at the Popeye's and determining that the vehicle had departed up River Road, deputies eventually located a vehicle meeting the description, followed it, and, after allegedly seeing the vehicle swerve toward the center line at least twice, pulled over the driver, who denied being intoxicated.

The deputies did not issue a citation for any moving violation. They asked defendant to perform field sobriety tests, however, for which he performed poorly. Defendant subsequently was charged by bill of information with driving a vehicle while intoxicated (DWI) subsequent to a fourth offense, in violation of La. R.S. 14:98.[1]

Defendant initially pled not guilty but later withdrew his not-guilty plea and entered a plea of guilty, while reserving his rights to appeal the trial court's denial

---

[1] Appellant previously pled guilty at least five other times to driving under the influence of alcohol—three times in Jefferson Parish and twice in St. Charles Parish. According to the application for a search warrant, which was introduced into evidence by defense counsel, a computer search indicated that defendant has had 15 previous DWI arrests since 1985, with the last arrest being in May 2009, after which he was sentenced to serve six years imprisonment.

of his motion to suppress, as well as any excessive sentence, as permitted by *State v. Crosby*, 338 So.2d 584, 588 (La. 1976). *See also State v. Ramsey*, 10-333 (La. App. 5 Cir. 1/25/11), 60 So.3d 36, 40 (a defendant may be allowed appellate review after entering a guilty plea if, at the time of his plea, he expressly reserves his right to appeal a specific adverse ruling).

Defendant filed a motion to suppress arguing that because there was no traffic violation, the deputy lacked reasonable suspicion to stop him. Defendant claims that he never left his lane of travel so as to violate La. R.S. 32:79.[2] As such, the stop constituted an unreasonable and unconstitutional seizure of his person and his vehicle in violation of the Fourth Amendment of the U.S. Constitution. In opposition, the State argued that defendant's vehicular movements, as recorded on the Mobile Video Recorder ("MVR"), show that he swerved toward or across the center line of the roadway. As such, the deputy's observations created reasonable suspicion for the stop.

At the hearing on the motion to suppress, the State and defendant referred to the testimony and evidence from the preliminary examination (P.E.) and admitted into evidence the transcript from the P.E. hearing. The trial court evaluated the following evidence when adjudicating defendant's motion to suppress:

Deputy Jerry Fountain of the St. Charles Parish Sheriff's Office testified at both the preliminary examination hearing and the motion to suppress hearing that he and Deputy Jeff Mahan responded to the call at Popeye's, but when they reached Popeye's, the suspicious vehicle already had left the area and reportedly was traveling west on River Road. The deputies later located a vehicle in a convenience store parking area that matched the description of the vehicle reported at Popeye's. When that vehicle left the convenience store, the deputies followed it

---

[2] La. R.S. 32:79 (1) provides: "A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."

and observed defendant swerve toward the center line, hitting the line at least a couple of times. When they stopped the vehicle, the deputies approached and Deputy Fountain requested defendant's driver's license. Deputy Fountain testified that defendant's eyes were red and glassy and that his speech was somewhat slurred. He confirmed that defendant had been at Popeye's. Deputy Fountain also noticed that defendant was reaching to his right and pushing down on something. Deputy Fountain asked defendant to exit the vehicle and to submit to a field sobriety test. Deputy Fountain indicated that he could smell alcohol on defendant's breath when he stepped out of the car. Deputy Fountain conducted a Horizontal Gaze Nystagmus (HGN) test, noting nystagmus at maximum deviation, lack of smooth pursuit, and nystagmus onset prior to forty-five degrees, and determined that defendant was impaired.

Deputy Fountain also asked defendant to perform the walk-and-turn test. He stated that he told defendant three times how to perform the test, but defendant did not perform the test correctly the first two times. On the third attempt, defendant "slightly fell off line" and then walked nine steps but did so without touching heal to toe, as instructed. He turned and walked back, again without touching heal to toe. Defendant declined to take the one-leg-stand test because of a prior injury. Accordingly, Corporal Scott Huff, a drug-recognition expert, performed the Modified Romberg Balance test and the Lack of Convergence test on defendant, which presented additional clues of impairment. Corporal Huff explained that the Lack of Convergence test addresses four drug categories: depressants, inhalants, dissociative anesthetics, and cannabis. He testified that defendant's left eye did not converge during the test, which was a symptom under four different drug categories. Corporal Huff further stated that defendant's girlfriend, who showed up later on the scene, confirmed that defendant took Xanax, a CNS depressant.

Deputy Fountain testified that the six clues needed for a DWI arrest were satisfied with the HGN alone, but that he had at least seven or eight clues with the walk-and-turn test and with Corporal Huff's tests. Therefore defendant was placed in custody and put in Deputy Fountain's unit. Upon searching the vehicle, Corporal Huff found a small bottle of Crown Royal that was three-quarters full on the passenger seat. A receipt found in the vehicle confirmed that defendant had purchased the bottle that same afternoon. The deputies released the vehicle to defendant's girlfriend and arrested defendant for possessing an open container of an alcoholic beverage and for a DWI.

Based on the evidence, the trial court denied the motion to suppress. Defendant thereafter changed his plea to guilty, reserving his rights to appeal the denial of the motion to suppress and any excessive sentence.

At the sentencing hearing, the trial court ordered defendant to serve 30 years with the Department of Corrections, suspending 10 years "to run consecutive to the revocations in 2 other matters, which I understand that you're backing up 9 years, and you'll do substantially less than that, based on the Department of Corrections guidelines." The trial court further imposed five years of home incarceration with a SCRAM bracelet after defendant was released. As conditions of his home incarceration and probation, the court required defendant to undergo a substance abuse evaluation, granted him permission to attend substance abuse treatment, and imposed a ban on all alcohol or drugs without a prescription. The court also suspended the mandatory fine of $5,000 and suspended any requirement to perform community service. Finally, the court ordered defendant to be assessed for drug court upon his release or inpatient treatment. The sentencing Minute Entry also indicated that defendant would be allowed to go to work and doctors' appointments, in addition to attending substance abuse treatment.

Counsel for defendant filed a motion to reconsider sentence, which the trial court denied on January 20, 2022. Defendant appeals the motion to suppress, asserts that the trial court erred in denying his motion to reconsider sentence, and that the sentence is unconstitutionally excessive.

## DISCUSSION

*Assignment of Error # 1 – Motion to Suppress*

In his first assignment of error, defendant argues that the trial court erred in denying the motion to suppress evidence because the stop of his vehicle was illegal, where he was not cited for committing any traffic violation. On the other hand, the State contends that the trial court reviewed the MVR recording at both hearings, which clearly showed defendant almost hit the center line on one occasion and actually hit it twice. According to the State, defendant swerved at least three separate times in a very short time span in a 25 mph zone in a residential neighborhood next to a school zone.

A trial court's decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. *State v. Calvert*, 01-826 (La. App. 5 Cir. 2/26/02), 811 So.2d 1081, 1084. *See also State v. Carter*, 20-1193 (La. 1/26/21), 309 So.3d 333, 336.

As a general rule, searches and seizures must be conducted pursuant to a validly executed search warrant or arrest warrant. *State v. Holmes*, 08-719 (La. App. 5 Cir. 3/10/09), 10 So.3d 274, 278, *writ denied*, 09-816 (La. 1/8/10), 24 So.3d 857. Warrantless searches and seizures are *per se* unreasonable unless justified by one of the exceptions to the warrant requirement. *Id*. A defendant who is adversely affected may move to suppress evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained. La. C.Cr.P. art. 703(A). When the constitutionality of a warrantless search or seizure is placed at issue by a motion to

suppress the evidence, the State bears the burden of proving the admissibility of any evidence seized without a warrant. La. C.Cr.P. art. 703(D); *State v. Davis*, 09-452 (La. App. 5 Cir. 1/26/10), 31 So.3d 513, 516, *writ denied*, *State ex rel. Davis v. State*, 10-2201 (La. 10/21/11), 73 So.3d 373. Evidence derived from an unreasonable stop will be excluded from trial. *State v. Taylor*, 12-25 (La. App. 5 Cir. 6/28/12), 97 So.3d 522, 529.

La. C.Cr.P. art. 215.1 recognizes the right of law enforcement officers to stop and interrogate those reasonably suspected of engaging in criminal activity. *See also State v. Mitchell*, 10-334 (La. App. 5 Cir. 10/26/10), 52 So.3d 155, 158, *writ denied*, *State ex rel. Mitchell v. State*, 11-355 (La. 12/2/11), 76 So.3d 1170 (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Belton*, 441 So.2d 1195, 1198 (La. 1983), *cert. denied*, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984)). Pursuant to the investigatory stop recognized by the United States Supreme Court in *Terry*, *supra*, a police officer may briefly seize a person if the officer has an objectively reasonable suspicion, supported by specific and articulable facts that the person is, or is about to be, engaged in criminal conduct, or is wanted for past criminal acts. *Carter*, *supra*.

Traffic violations serve as valid bases for investigatory stops. *State v. Leonard*, 06-361 (La. App. 5 Cir. 10/31/06), 945 So.2d 764, 766. The fact that an officer does not issue a traffic citation is irrelevant to the constitutionality of the stop. *State v. Williams*, 13-732 (La. App. 5 Cir. 3/26/14), 138 So.3d 727, 732. When an officer observes what he objectively believes is a traffic offense, the decision to stop the vehicle is reasonable, regardless of the officer's subjective motivation. *State v. Hunt*, 09-1589 (La. 12/1/09), 25 So.3d 746, 753 (citing *Whren v. United States*, 517 U.S. 806, 810, 813, 116 S.Ct. 1769, 1772, 1774, 135 L.Ed.2d 89 (1996)). A vehicle need not leave its lane to provide reasonable suspicion, by reason of its erratic movements, that the driver may be impaired or intoxicated.

*State v. Waters*, 00-356 (La. 3/12/01), 780 So.2d 1053, 1057. *See also* La. R.S. 32:79 (1). The standard is purely objective and does not take into consideration the subjective beliefs or expectations of the detaining officer. *State v. Martin*, 11-160 (La. 12/28/11), 83 So.3d 230, 237. "Although they may serve, and may often appear intended to serve, as the prelude to the investigation of much more serious offenses, even relatively minor traffic violations provide an objective basis for lawfully detaining the vehicle and its occupants." *Waters*, 780 So.2d at 1056.

In *Waters*, Corporals Magee and Edwards pulled behind the defendant's vehicle on I-12. As they approached, they observed it drift to the right and make contact with the fog line along the shoulder. At a suppression hearing, Corporal Magee testified that the defendant's vehicle merely touched the right-hand fog line on the shoulder but did not cross it, but he was concerned that the driver was either too fatigued to operate the vehicle safely or was intoxicated. He therefore stopped the defendant's car. In denying the defendant's motion to suppress, the trial court found that Corporal Magee's testimony "established a traffic violation" which, given the early morning hours, "indicated a quite reasonable suspicion that either the defendant was intoxicated or that he was too weary to safely operate a motor vehicle." *Id*. at 1055. The Louisiana Supreme Court agreed that Corporal Magee had an objectively reasonable basis for stopping the defendant's vehicle, where La. R.S. 32:79 (1) provides that on a divided roadway, "[a] vehicle shall be driven as nearly as practicable *entirely* within a single lane ... (emphasis added)." Corporal Magee therefore observed a violation of the statute, albeit a minor one, when the vehicle veered in its lane for no apparent reason and made contact with the right-hand fog line. *Id*. at 1056-57.

Likewise, in *State v. McVan*, 32,434 (La. App. 2 Cir. 3/11/99), 744 So.2d 641, 642, *writ not considered*, 99-1021 (La. 5/26/99), 743 So.2d 653, the Second Circuit determined that "the motorist never left his lane, though he did travel from

the fog line to the center line, back to the center of the lane and then to the center line again. He was traveling 10 miles *under* the speed limit, which is somewhat unusual." (Emphasis in original). The court noted that after an officer stopped the defendant, the officer confirmed the defendant's "obvious and significant impairment." The appellate court acknowledged that it was a close call but nevertheless ruled that there was reasonable suspicion to conduct an investigatory stop, expressly declining to follow the Third Circuit's ruling in *State v. Vaughn*, 448 So.2d 915 (La. App. 3d Cir. 1984).[3]

Crossing over a highway line is a traffic violation and a sufficient reason to stop a vehicle. *See State v. Calvert*, *supra*, 811 So.2d at 1083; *State v. Miller*, 00-1657 (La. 10/26/01), 798 So.2d 947. Merely touching the line is also sufficient to initiate a stop. *See State v. Boeh*, 20-461 (La. App. 1 Cir. 4/16/21), 324 So.3d 653, *writ denied*, 21-689 (La. 10/5/21), 325 So.3d 379; *State v. Hinojosa*, 07-586 (La. App. 1 Cir. 11/2/07), 2007 WL 3407732 (unpublished opinion). *See also United States v. Hernandez*, 744 F. App'x 873, 874 (5th Cir. 2018).

In *State v. McLendon*, 15-668 (La. App. 3 Cir. 2/10/16), 185 So.3d 303, a detective and probation officer in an unmarked police vehicle observed defendant's vehicle crossing into Louisiana from Texas. The detective followed the vehicle for approximately twelve miles before he saw it touch the fog line. Soon thereafter, that detective informed another detective in a marked police car to initiate a traffic stop for the alleged traffic violation. The second detective testified that after following the defendant for approximately thirty seconds, he also saw the vehicle

---

[3]  In *Vaughn*, *supra*, the Third Circuit found there was no reasonable cause to stop the defendant, stating that the action of "crossing six inches over the center line and traveling like this for approximately ten feet, even when coupled with the observation of a vehicle swaying within its own lane, does not per se present sufficient facts to establish the requisite reasonable cause" for an officer to legally stop a motorist, especially "when the police officer followed the defendant for only one and one-half blocks, and further, when defendant's driving presented no evidence of danger to himself or to others." More recently, however, the Third Circuit stated that *Vaughn* "is an outlier in an array of Louisiana case law whose precedent expressly advances the opposite outcome." *State v. McLendon*, 15-668 (La. App. 3 Cir. 2/10/16), 185 So.3d 303, 306.

"bump" the fog line, and he initiated a traffic stop. *Id*. at 305. On appeal, the defendant asserted that merely touching the fog line constituted a *de minimis* violation for which one cannot justifiably be subjected to a traffic stop. Citing La. R.S. 32:79 and La. C.Cr.P. art. 215.1, the court found that the defendant had committed a traffic violation when his vehicle touched the fog line, and the detectives were justified in initiating the traffic stop. *Id*. at 306.

At the preliminary examination hearing in the present case,[4] Deputy Fountain stated that while following the vehicle, he observed it swerve to the left a couple of times, hitting the center line. He testified that the vehicle swerved to the center lane "at least twice." While viewing the MVR, the deputy noted that defendant was "straddling the center line." The deputy stated that defendant "hit the center line, and then he began riding the center line for a short distance." At the end of the preliminary examination hearing, the trial court indicated seeing "on the video that he did not straddle the center line, but he did swerve towards the center line."

At the suppression hearing, Deputy Fountain testified that defendant was seen "swerving a couple of times and he hit the centerline at least twice." When asked what crime he believed defendant had committed or was committing, the deputy replied, "careless operation, at the very least." In denying the motion to suppress, the trial court stated: "Just like in the preliminary examination where I said he did swerve towards the centerline, I did see it. I just saw it again. … And I understand what the sole basis for the stop is."

The MVR recording reflects that defendant at least touched the center line more than once. It was not necessary for defendant to cross the center line to justify the initiation of a traffic stop. Additionally, the fact that no traffic citation

---

[4] As previously noted, evidence and testimony offered at the preliminary examination hearing was also referenced at the suppression hearing, and the transcript from the earlier hearing was admitted into evidence at the suppression hearing.

was issued is irrelevant to the constitutionality of the stop. *Williams*, 138 So.3d at 732. Based on the totality of the evidence, we find the trial court did not abuse its discretion in determining that the deputies had reasonable suspicion to conduct a traffic stop and denying defendant's motion to suppress.

*Assignments of Error #2 and #3 – Sentencing*

In his second and third assignments of error, defendant argues that the trial court erred in denying his motion to reconsider sentence, and further erred because the sentence imposed is unconstitutionally excessive, given his age (60) and the fact that he is already serving time on another sentence. We pretermit a discussion of defendant's sentencing assignments of error, however, because our review of the record indicates a number of errors patent in sentencing.

At the sentencing hearing, the trial court sentenced defendant to 30 years with the Department of Corrections, suspending 10 years "to run consecutive to the revocations in 2 other matters, which I understand that you're backing up 9 years, and you'll do substantially less than that, based on the Department of Corrections guidelines." The court further imposed five years of home incarceration with a SCRAM bracelet after defendant was released. As conditions of his home incarceration and probation, the court required defendant to undergo a substance abuse evaluation, granted permission to attend substance abuse treatment, and imposed a ban on all alcohol or drugs without a prescription. The court also suspended the mandatory fine of $5,000 and suspended any requirement to perform community service. Finally, the court ordered defendant to be assessed for drug court upon his release or inpatient treatment. The sentencing Minute Entry also indicated that defendant would be allowed to go to work and doctors' appointments, in addition to attending substance abuse treatment.[5]

---

[5] The uniform commitment order (UCO) provides that the total length of the sentence is 30 years; defendant is to serve 20 years in custody; the sentence is not concurrent with any other sentence defendant is now serving; the sentence is consecutive to "09-0306 St. Charles, 29th

Our review of the record indicates that the trial court sentenced defendant pursuant to the wrong provision of La. R.S. 14:98.4.[6] The record contains evidence of five of defendant's prior DWI cases and sentences. In case 09-0306 (29th JDC for the Parish of St. Charles), defendant pled guilty to a fourth or subsequent DWI in violation of La. R.S. 14:98 and was "sentenced to 10 years Dept. of Corrections, 2 years suspended," and given credit for time served. The trial court also recommended a clinical substance abuse treatment program. In case 04-2286 (24th JDC for the Parish of Jefferson), defendant pled guilty to two counts of fourth-offense DWI, in violation of La. R.S. 14: 98 (E), and was sentenced to 10 years imprisonment at hard labor on each count, to run concurrently, with credit for time served. All but 60 days of the sentence was suspended, and 60 days were to be served on home incarceration. Defendant would then be on probation for three years and would be required to undergo evaluation for substance abuse and submit to in-patient treatment, after which he would be placed on home incarceration for the remainder of the probationary period.

---

JDC;" defendant is given credit for time served; and substance-use-disorder screening is recommended. A box remains empty on the UCO next to the statement: "amount of time to be served without benefit, if applicable."

[6]     La. R.S. 14:98.4 (A)(1) provides that on a conviction of a fourth or subsequent offense violation of R.S. 14:98, the offender shall be fined $5,000 and imprisoned, with or without hard labor, for not less than ten years nor more than 30 years, and two years of the sentence of imprisonment shall be imposed without benefit of parole, probation, or suspension of sentence. Pursuant to La. R.S. 14:98.4 (A)(1)(a), however, the two-year period may be suspended if the offender is accepted into a drug division probation program pursuant to La. R.S. 13:5301 *et seq.* On the other hand, La. R.S. 14:98.4 (A)(1)(b) states that if the offender has previously participated in a drug division program pursuant to a sentence imposed on a third or subsequent offense conviction, three years of the sentence shall be imposed without benefits, and the offender shall not be eligible to have the mandatory portion of his sentence suspended because of his participation in a drug division program.

La. R.S. 14:98.4 (B), which applies if the offender previously was required to participate in substance abuse treatment or home incarceration pursuant to a sentence imposed on a third offense conviction, at least three years of the sentence shall be imposed without benefit of parole, probation, or suspension of sentence.

La. R.S. 14:98.4 (C), which applies if the offender previously received the benefit of parole, probation, or suspension of sentence on a conviction of a fourth or subsequent offense in violation of La. R.S. 14:98, provides that no part of the sentence shall be imposed with benefit of parole, probation, or suspension of sentence.

Here, although not specifically enunciated, the trial court appears to have sentenced defendant pursuant to La. R.S. 14:98.4 (A), because during the guilty-plea colloquy, the trial court informed defendant of the maximum sentence that could be imposed and indicated that two years of the sentence must be imposed without the benefit of parole, probation, or suspension of sentence. Further, the trial court indicated that it was suspending the community service requirement, which may be found only in La. R.S. 14:98.4 (A). Because defendant received the benefit of probation and suspension of sentence on previous fourth-offense DWI convictions, however, the trial court incorrectly sentenced him under La. R.S. 14:98.4 (A) rather than La. R.S. 14:98.4 (C).

Due to this error in sentencing, defendant's sentence is vacated and the matter is remanded for resentencing. The additional errors patent, including incorrectly advising defendant of the maximum sentence (referencing the maximum under La. R.S. 14:98.4 (A) rather than 14:98.4 (C)); the failure to specify all the conditions to home incarceration at sentencing or to give defendant a certificate setting forth those conditions, are moot in light of the remand.

## DECREE

The trial court's ruling denying the motion to suppress and defendant's conviction are affirmed. Due to errors patent in sentencing, we vacate defendant's sentence and remand the matter to the trial court for resentencing.

**CONVICTION AFFIRMED;**
**SENTENCE VACATED;**
**REMANDED FOR RESENTENCING**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
INTERIM CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT
101 DERBIGNY STREET (70053)
POST OFFICE BOX 489
GRETNA, LOUISIANA 70054
www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **NOVEMBER 2, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 22-KA-89

### E-NOTIFIED
29TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE M. LAUREN LEMMON (DISTRICT JUDGE)
LIEU T. VO CLARK (APPELLANT)

### MAILED
LOUIS G. AUTHEMENT (APPELLEE)
ATTORNEY AT LAW
13919 RIVER ROAD
SUITE 300
LULING, LA 70070

HON. HONORABLE JOEL T. CHAISSON, II
(APPELLEE)
DISTRICT ATTORNEY
TWENTY-NINTH JUDICIAL DISTRICT
COURT
POST OFFICE BOX 680
HAHNVILLE, LA 70057